**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GARY HANLEY on behalf of himself and others | ) | |
| similarly situated, | ) | 1:12-cv-1612 |
|     Plaintiff, | ) | |
| | ) | Judge Castillo |
|         v. | ) | Magistrate Judge Valdez |
| | ) | |
| FIFTH THIRD BANK, | ) | JURY DEMANDED |
|     Defendant. | ) | |

**PLAINTIFF'S MOTION AND INCORPORATED MEMORANDUM IN SUPPORT OF UNOPPOSED**
**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

**Page No.**

I.     INTRODUCTION ................................................................................................... 1

II.    NATURE OF THE CASE ...................................................................................... 2

III.   THE PROPOSED SETTLEMENT ...................................................................... 3

     A.    The Settlement Class.................................................................................. 3

     B.    The Settlement Fund ................................................................................. 4

     C.    Notice and Settlement Administration................................................. 4

     D.    Opt-Out and Objection Procedures ...................................................... 5

     E.    Release ........................................................................................................ 6

IV.   ARGUMENT ......................................................................................................... 7

     A.    The Settlement Is Well Within the Range of Possible Approval
           and Therefore Warrants Preliminarily Approval ................................... 7

          1.    All Factors Favor Preliminary Approval...................................... 9

              a.    The settlement provides significant benefits to
                   the Settlement Class, particularly in light of the
                   uncertainty of prevailing in the litigation ..................................... 9

              b.    This litigation has already involved briefing of
                   critical legal issues and expansive and complex
                   discovery .................................................................................... 10

              c.    The settlement resulted from extensive arms-length
                   negotiations and is not the product of collusion........................ 11

          2.    Plaintiff's Requested Fees Are Reasonable.............................. 11

          3.    The Requested Enhancement Award Is Reasonable ............... 12

          4.    The Proposed Class Notice Is Adequate ................................. 13

      B.     The Court Should Grant Class Certification for Settlement Purposes ................ 16

           1.     The Rule 23(a) factors are met ................................................................ 17

                a.     The class is sufficiently numerous and joinder is impracticable ................................................................................ 17

                b.     The Settlement Class shares many common issues of law and fact ................................................................................ 18

                c.     The Plaintiff's claims are typical of the Settlement Class .......... 19

                d.     The Plaintiff and his counsel are adequate representatives ......................................................................... 19

           2.     The Rule 23(b)(3) factors are met ........................................................... 20

      C.     Scheduling Final Approval Hearing Is Appropriate ............................................ 22

V.     CONCLUSION ................................................................................................................ 23

**TABLE OF AUTHORITIES**

**Page No.**

**FEDERAL CASES**

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) ...................................................................................... 20, 21

*Am. Int'l Grp., Inc. et al., v. ACE INA Holdings, et al.,*
Nos. 07-cv-2898, 09 C 2026, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ............. 1, 2, 7, 21

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
616 F.2d 305 (7th Cir. 1980) ......................................................................... 7, 9

*Bellows v. NCO Fin. Sys., Inc.*,
No. 07-CV-1413 W(AJB), 2009 WL 35468 (S.D. Cal. Jan 5, 2009) ................................... 12

*Burns v. First Am. Bank*,
No. 04 C. 7682, 2006 U.S. Dist. LEXIS 92159 (N.D. Ill. Dec. 19, 2006)............................ 14

*City of Greenville, et al. v. Syngenta Crop Prot., Inc., et al.,*
No. 3:10-cv-188-JPG-PMF, 2012 WL 1948153 (S.D. Ill. May 30, 2012) ............................ 8

*Cook v. Niedert*,
132 F.3d 1004 (7th Cir. 1998) ......................................................................... 13

*F.C.V., Inc. v. Sterling Nat'l. Bank*,
652 F. Supp. 2d 928 (N.D. Ill. 2009) ................................................................ 15

*Gammon v. GC Servs. Ltd. P'ship.*,
162 F.R.D. 313 (N.D. Ill. 1995) ....................................................................... 20

*Golon v. Ohio Savs. Bank*,
98 C 7430, 1999 WL 965593 (N.D. Ill. Oct. 15, 1999) ...................................................... 22

*Haynes v. Logan Furniture,*
503 F.2d 1161 (7th Cir. 1974) ......................................................................... 21

*Henry v. Cash Today, Inc.,*
199 F.R.D. 566 (S.D. Tex. 2000) ....................................................................... 21

*In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*,
    280 F.R.D. 364 (N.D. Ill. 2011) .............................................................................. 8, 13, 21

*In re Northfield Labs., Inc. Sec. Litig.*,
    No. 06 C 1493, 2012 WL 366852 (N.D. Ill. Jan. 31, 2012) ........................................... 8, 9

*In re Synthroid Mktg. Litig.*,
    264 F.3d 712 (7th Cir. 2001) ...................................................................................... 12

*In re Vivendi Universal, S.A.*,
    242 F.R.D. 76 (S.D.N.Y. 2007) ................................................................................... 15

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ....................................................................................... 9

*Kinder v. Nw. Bank*,
    No. 1:10-cv-405, 2012 U.S. Dist. LEXIS 97496 (W.D. Mich. June 5, 2012) ...................... 14

*Mangone v. First USA Bank*,
    206 F.R.D. 222 (S.D. Ill. 2001) ................................................................................... 15

*Mars Steel Corp. v. Cont'l Ill. Nat'l. Bank & Trust Co. of Chicago*,
    834 F. 2d 677 (7th Cir. 1987) ..................................................................................... 11

*McCabe v. Crawford & Co.*,
    210 F.R.D. 631 (N.D. Ill. 2002) .................................................................................. 17

*Medina v. Mfrs. & Traders Trust Co.*,
    No. 04 C 2175, 2004 WL 3119019 (N.D. Ill. Dec. 14, 2004) .......................................... 14

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306, 70 S.Ct. 652 (1950)............................................................................... 15

*Murray v. GMAC Mortg. Corp.*,
    434 F.3d 948 (7th Cir. 2006) ..................................................................................... 21

*Parker v. Risk Mgmt. Alts., Inc.*,
    206 F.R.D. 211 (N.D. Ill. 2002) .................................................................................. 19

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)................................................................................................... 21

*Rahim v. Sheahan*,
    No. 99 C 0395, 2001 WL 1263493 (N.D. Ill. Oct. 19, 2001)........................................... 20

*Randolph v. Crown Asset Mgmt., LLC*,
 254 F.R.D. 513 (N.D. Ill. 2008) ....................................................................... 18

*Reliable Money Order, Inc., v McKnight Sales Co., Inc.*,
 218 F.R.D. 327 (E.D. Wis. 2012) ..................................................................... 18

*Schulte v. Fifth Third Bank*,
 805 F. Supp.2d 560 (N.D. Ill. 2011) .................................................................. 9

*Shurland v. Bacci Cafe & Pizzeria on Ogden, Inc.*,
 271 F.R.D. 139 (N.D. Ill. 2010) .................................................................. 14, 15

*Simer v. Rios*,
 661 F.2d 655 (7th Cir. 1981) ......................................................................... 15

*Sledge v. Sands*,
 182 F.R.D. 255 (N.D. Ill. 1998) ..................................................................... 20

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
 463 F.3d 646 (7th Cir. 2006) .......................................................................... 9

**FEDERAL STATUTES**

47 U.S.C. §227(b)(1)(A)(iii) ................................................................................. 2

**FEDERAL RULES**

Fed. R. Civ. P. 23(a)(4) ...................................................................................... 19

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................... 14, 16

Fed. R. Civ. P. 23(d)(2) ...................................................................................... 13

**OTHER AUTHORITIES**

H. Newberg & A. Conte, Newberg on Class Actions § 3:13 (4th ed. 2002) ................................ 19

H. Newberg & A. Conte, Newberg on Class Actions § 11:22 (4th ed. 2002) ............................... 17

H. Newberg & A. Conte, Newberg on Class Actions § 11:41 (4th ed. 2002) ................................ 7

v

H. Newberg & A. Conte, Newberg on Class Actions § 11:42 (4th ed. 2002) ............................. 11

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd 559, 566 (Jan. 4, 2008) ................................................................. 2

*Manual for Complex Litig.* § 21.31 (4th ed. 2004) ........................................................ 13

*Manual for Complex Litig.* § 21.62 (4th ed. 2004) ....................................................... 13

*Manual for Complex Litig.* § 21.633 (4th ed. 2004) ...................................................... 8

## I. INTRODUCTION

After more than a year of hard-fought litigation, three formal mediation sessions, and additional informal negotiations over a span of several months, the parties in this Telephone Consumer Protection Act, 47 U.S.C. §227(b) ("TCPA") case have reached a proposed class action settlement. (*See* Settlement Agreement, Ex. A, Pls.' Mot. Prelim. App.) The settlement establishes a $4.5 million fund that Plaintiff expects will pay class members an estimated $200-$300 per claim. The settlement calls for direct notice by United States Mail to the approximately 200,000 persons that Fifth Third determined might be members of the Settlement Class and for whom Fifth Third has names and addresses in its records, and publication and targeted Internet advertising notice calculated to reach any class members who, for whatever reason, may not receive mailed notice.

If approved, the settlement would bring a sure end to what otherwise has been, and likely would continue to be, contentious and costly litigation centered on the unsettled legal question of Fifth Third Bank's liability for the allegedly unlawful collection calls challenged in this action.

In this motion, Plaintiff seeks preliminary certification of a settlement class, approval of claims procedures, and approval of the proposed form and method of class notice. This memorandum describes in detail the reasons why preliminary approval is in the best interests of the class, and is consistent with Rule 23.

In evaluating the fairness of a proposed class action settlement, the most important consideration is the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement. *Am. Int'l Grp., Inc. et al., v. ACE INA Holdings, et al.,* Nos. 07-cv-2898,

09 C 2026, 2012 WL 651727, at *2 (N.D. Ill. Feb. 28, 2012). While the Plaintiff believes he would secure class certification and prevail on the merits at trial, success is not assured. At every turn, Fifth Third has vigorously defended this case. The relief provided here—cash payments from the settlement fund—meets and exceeds the applicable standards of fairness. Accordingly, the Court should preliminarily approve the settlement so that class members can receive notice of their rights.

## II. NATURE OF THE CASE

The TCPA prohibits the placement of telephone calls to cell phones using any "automatic telephone dialing system," unless the caller has the "prior express consent" of the called party to make such calls. 47 U.S.C. §227(b)(1)(A)(iii). Between 2008 and 2012, Plaintiff Gary Hanley received hundreds of calls from Fifth Third Bank, which was attempting to collect two separate auto loans. Plaintiff alleges that Fifth Third also made calls to other Fifth Third customers who were allegedly in default during the class period. Plaintiff alleges that Fifth Third made the calls using an "automatic telephone dialing system" as that term is used in the TCPA.[1]

The Federal Communications Commission has determined that providing one's telephone number to a creditor constitutes "prior express consent" to be called at that number, as to that account. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd 559, 566 (Jan. 4, 2008). Plaintiff provided his cellular telephone number to Fifth Third on the loan application for one of the loans about which Fifth Third was calling, but later requested that the calls cease. Plaintiff did not provide his cellular telephone number to Fifth Third in the application itself for the second loan about which Fifth

---

[1] For purposes of this case only, the parties stipulated to the fact that the calls were made using equipment that is regulated by the TCPA. [Docket Item 35]

Third was calling.  Plaintiff contends that all calls regarding the loan where the telephone number was not on the loan application violated the TCPA, and that all calls regarding the second loan that were made after his requests that they stop constituted TCPA violations.

Fifth Third disagrees with Plaintiff, and contends that it had the express consent of Plaintiff for all calls it made to Plaintiff's cell phone.  Further, Fifth Third contends that it similarly had consent to call each and every class member and that neither Plaintiff nor the class members have the ability to revoke that consent under the TCPA.

For settlement purposes, however, Fifth Third searched its records to determine which of its customers may be in a similar situation as Plaintiff.  After conducting this investigation, Fifth Third estimates that there are approximately 200,000 cell phone numbers that it (or some entity on its behalf) called using an autodialer between January 2007 and November 2012, who did not provide their phone number to Fifth Third at the time of loan origination.

### III.  THE PROPOSED SETTLEMENT

**A.**      **The Settlement Class**

The proposed settlement would establish a "Settlement Class" defined as follows:

All persons to whom, on or after March 6, 2008 through the date of Preliminary Approval, Fifth Third or any of its affiliates or subsidiaries, or any entity acting on its behalf, placed a non-emergency telephone call to a cellular telephone through the use of an automatic telephone dialing system and/or an artificial or prerecorded voice, without the consent of such person.

Excluded from the Settlement Class are the Judge to whom the Action is assigned and any member of the Judge's staff and immediate family, as well as all persons who validly request exclusion from the Settlement Class.  (Ex. A § II.A.28–29)

**B.    The Settlement Fund**

The proposed settlement would establish a $4.5 million fund that will be used to pay

notice and administration costs (estimated at around $300,000), Court-approved attorneys'

fees (up to 33 1/3 percent of the $4.5 million fund), reimbursement of costs and expenses,

Court-approved service payments to Plaintiff (up to $25,000), and payments to Settlement

Class members ("Settlement Fund").  (Ex. A § III.C)  Authorized claimants are entitled to equal

shares of the remainder of the Settlement Fund after payments for notice, administration,

attorneys' fees and costs, and Plaintiff's service payments with a maximum cap of $10,000 per

claimant.  (Ex. A § III.F)

Plaintiff anticipates a payout in the range of $200-$300 per Settlement Class member

claim.  Because of the size of the cap to the amount Settlement Class members may recover, *cy*

*pres* is expected to be minimal, and arise only from uncashed checks or similar leftover

funds.  The parties plan to jointly suggest that the Court approve Coordinated Advice and

Referral Program for Legal Services (CARPLS), a non-profit organization that provides pro bono

legal services, as the recipient of such funds.  (Ex. A § III.F.3)

**C.    Notice and Settlement Administration**

As noted above, the Settlement Class members are consumers who received autodialed

or prerecorded calls to their cell phones between March 6, 2008 and the date of Preliminary

Approval.  Because the class is comprised primarily of Fifth Third customers, the parties have

determined that notice should be sent via United States Mail to the best known address for the

persons that Fifth Third's reasonably available computerized account records show were called,

and did not consent to the call(s).  To that end, Fifth Third has investigated its records and

4

created a list comprised of the names and contact information for such persons (the "Class List").

Despite Fifth Third's efforts to investigate and compile the Class List, the parties understand that the Class List may be imperfect. For example, class members may have moved or changed their phone numbers. Therefore, the parties have agreed to do a comprehensive publication notice regime, targeted to reach persons within the area codes and geographical areas where Fifth Third does business. (Ex. A, § III.E)[2]

This publication notice will include print publication in several regional newspapers, as well as targeted internet advertisements/impressions. (Ex. A, § III.E.2) The parties have also agreed to establish an Internet website, which class members may visit to learn about the settlement, and obtain documents such as the settlement agreement, notice and claim form. (Ex. A, § III.E.3) The parties have agreed upon, and propose that the Court approve, nationally-recognized class action administration firm Rust Consulting to implement and administer notice and administration of the settlement. (Ex. A, §§ II.A.6 & III.D)

**D.     Opt-Out and Objection Procedures**

Settlement Class members will have an opportunity to exclude themselves from the settlement or object to its approval. (*See* Ex. A, §§ III.J & III.K) The procedures and deadlines for filing opt-out requests and objections will be conspicuously listed in the notices and on the settlement website. With regard to objections, the notices inform settlement class members that they will have an opportunity to appear and have their objections heard by this Court at a

---

[2] These areas include: Cincinnati, OH; Columbus, OH; Cleveland, OH; Toledo, OH; Pittsburgh, PA; Grand Rapids, MI; Southfield, MI; Chicago, IL; Indianapolis, IN; Evansville, IN; St. Louis, MO; Louisville, KY; Naples, FL; Tampa, FL; Orlando, FL; Jacksonville, FL; Nashville, TN; Charlotte, NC; and Atlanta, GA.

Final Approval Hearing.  (Ex. A, Exs. C, E, F) The notices also inform settlement class members that they will be bound by the release unless they timely exercise their opt-out right.  *Id.*

**E.     Release**

The release is appropriately tailored to the claims raised in the case.  In exchange for settlement benefits, Plaintiff and Settlement Class members will release Fifth Third, its executives, employees and related entities as well as third parties that engaged in use of autodialers on its behalf, from liability for all causes of action alleging improper use of an "automatic telephone dialing system" and/or an "artificial or prerecorded voice" to make telephone calls to a cellular telephone.  (Ex. A § III.M).  The precise release, as agreed by the parties, is as follows:

> Plaintiff and each and all Settlement Class Members, on behalf of themselves and their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, and predecessors-in-interest, will be deemed to have fully released and forever discharged Fifth Third Bank and its respective predecessors, successors, parents, subsidiaries, divisions, assigns and affiliates, and each of their respective past or present officers, directors, employees, attorneys, shareholders, managers, members, principals, agents, accountants, auditors, advisors, consultants, insurers, vendors, contractors and any other person or entity acting on their behalf  (together, the "Released Parties") from any and all claims, actions, causes of action or liabilities as of the date of the Final Approval Order that claim improper use of an "automatic telephone dialing system" and/or an "artificial or prerecorded voice" to make telephone calls to a cellular telephone by or on behalf of the Released Parties in connection with efforts to contact or attempt to contact Settlement Class Members by or on behalf of Fifth Third which give rise to claims under or for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq.

(Ex. A § III.M).

## IV.  ARGUMENT

**A.      The Settlement Is Well Within the Range of Possible Approval and Therefore Warrants Preliminarily Approval**

The settlement represents a fair and reasonable resolution of this dispute and is worthy of notice to, and consideration by, the Settlement Class members.  It will provide financial relief to participating Settlement Class members and will relieve the parties of the burden, uncertainty and risk of continued litigation.

Under Rule 23(e)(2), a court may approve a class action settlement if it is "fair, reasonable, and adequate."  A proposed class settlement is presumptively fair where it "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." H. Newberg & A. Conte, Newberg on Class Actions ("Newberg") § 11:41 (4th ed. 2002); *Goldsmith v. Tech Solutions Co*., No. 92 C 4374, 1995 WL 17009594, at *3 (N.D. Ill. Oct. 10, 1995).

As the Seventh Circuit recognizes, courts generally favor settlements of class actions:

It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement.  In the class action context in particular, 'there is an overriding public interest in favor of settlement.' Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *Am. Int'l Grp.*, 2012 WL 651727, at *1 ("Federal courts naturally favor

the settlement of class action litigation.") (*quoting Isby v. Bayh,* 75 F.3d 1191, 1196 (7th Cir. 1996)).

District court review of a class action settlement is a two-step process. *In re Northfield Labs., Inc. Sec. Litig.*, No. 06 C 1493, 2012 WL 366852, at *5 (N.D. Ill. Jan. 31, 2012) (*citing In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010)). At the preliminary approval stage, the question for this Court is whether the settlement falls well within the "range of possible approval," and is sufficiently fair, reasonable, and adequate to warrant dissemination of notice apprising class members of the proposed settlement and to establish procedures for a final settlement hearing under Rule 23(e). *Id.*; *City of Greenville, et al. v. Syngenta Crop Prot., Inc., et al*., No. 3:10-cv-188-JPG-PMF, 2012 WL 1948153, at *3 (S.D. Ill. May 30, 2012); Newburg, *supra*, § 11.41. If the district court preliminarily approves a class action settlement, it then proceeds to the second step in the review process, the fairness hearing. *In re Northfield Labs*, 2012 WL 366852, at *5; *Manual for Complex Litig.* § 21.633 (4th ed. 2004).

In assessing the fairness, reasonableness and adequacy of a settlement, courts view the facts in the light most favorable to the settlement. *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 280 F.R.D. 364, 375 (N.D. Ill. 2011) (*citing Isby*, 75 F.3d at 1199). "[T]he Court must not substitute its own judgment as to the optimal settlement terms for the judgment of the litigants and their counsel." *Id.* (*citing Armstrong*, 616 F.2d at 315). To evaluate fairness at the preliminary approval stage, courts consider the following factors: (1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement; (2) the complexity, length and expense of the litigation; (3) the presence of

8

collusion in reaching a settlement; and (4) the stage of the proceedings and the amount of discovery completed. *Id*. (*citing Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 653 (7th Cir. 2006)); *see also Armstrong*, 616 F.2d at 314; *Isby*, 75 F.3d at 1199. Of these considerations, the first is most important. *Synfuel Techs., Inc.,* 463 F.3d at 653.

      **1.**      **All Factors Favor Preliminary Approval**

          **a.**      **The settlement provides significant benefits to the Settlement Class, particularly in light of the uncertainty of prevailing in the litigation**

Although the precise amount of each Settlement Class member's award cannot be determined, Plaintiff estimates a payout in the range of $200-$300 per Settlement Class member, which is substantial in a TCPA class action settlement. The amount of the settlement and the payments to Settlement Class members are particularly significant in light of the risks of ongoing litigation. Fifth Third has strenuously denied that class certification is appropriate in this case. Courts are split and have either granted or denied class certification in TCPA cases depending upon the facts of the case. *Compare Bridgeview Heath Care Ctr. Ltd. v. Clark*, No. 09 C 5601, 2011 WL 4628744, at *5 (N.D. Ill. Sept. 30, 2011) (granting class certification) *with Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1169 (S.D. Ind. 1997) (denying class certification). If Fifth Third were able to present convincing facts to support its position, the Court could have refused to certify the class, leaving only the named Plaintiff to pursue his individual claims." "Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *See Schulte v. Fifth Third Bank,* 805 F. Supp.2d 560, 586 (N.D. Ill. 2011) (citation omitted). "If the Court approves the [settlement], the present lawsuit will come to an end and [Settlement Class members] will realize both immediate and

future benefits as a result." *Id.* Plaintiff and Settlement Class members will receive their payments now, instead of years from now—or perhaps never. *See id.* at 582.

> **b.** **This litigation has already involved briefing of critical legal issues and expansive and complex discovery**

The case has required the parties to brief certain legal issues, including in particular, the critical and unsettled issue of what might constitute "prior express consent" to receive autodialed calls on one's cellular telephone, an issue challenged by Fifth Third when Plaintiff requested leave to file an amended complaint. *See* Dkt. No. 39. Fifth Third argued that Plaintiff's proposed amendments would be futile. *See id.* After extensive briefing, the Court granted Plaintiff's motion for leave to amend, without commenting on the substantive merits of "prior express consent," leaving the issue open for later determination. *See* Dkt. No. 48. The risks and uncertainties of that determination for both parties is one of the primary reasons for this settlement.

The parties have also engaged in discovery regarding Fifth Third's calling practices and policies, and call data relating to the class. Ex. B, Declaration of Alexander H. Burke. Indeed, Fifth Third conducted an extensive investigation of its records and has estimated that approximately 200,000 cell phone numbers belonging to individuals who did not provide their phone number to Fifth Third at the time of loan origination were called using an autodialer between January 2007 and November 2012.

### c. The settlement resulted from extensive arms-length negotiations and is not the product of collusion

The requirement that a settlement be fair is designed to protect against collusion among the parties. *Mars Steel Corp. v. Cont'l Ill. Nat'l. Bank & Trust Co. of Chicago*, 834 F. 2d 677, 684 (7th Cir. 1987) (approving settlement upon a finding of no "hanky-panky" in negotiations). There is an initial presumption that a proposed settlement is fair and reasonable when it was the result of arms-length negotiations. Newberg, *supra*, § 11:42. Here, the proposed settlement was negotiated after a year of hard-fought litigation, followed by several months of highly contested settlement negotiations. Counsel for the parties are particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases. In negotiating this settlement, Plaintiff's counsel had the benefit of years of experience with class actions in general and a familiarity with the facts of this case. Ex. B, Declaration of Alexander H. Burke, Ex. C, Declaration of Beth E. Terrell. Three experienced mediators, Judge Valdez, Judge Neville (Ret.) at JAMS, and Judge Castillo participated actively throughout the negotiation process. Ex. B. The fact that Plaintiff achieved an excellent result for the Settlement Class despite facing significant procedural and substantive hurdles is a testament to the non-collusive nature of the proposed settlement.

### 2. Plaintiff's Requested Fees Are Reasonable

Pursuant to the Settlement Agreement, Plaintiff's counsel seek an award of $1,500,000, to compensate them for reasonable fees associated with this action. Plaintiffs' counsel also seek reimbursement for reasonable costs incurred prosecuting this action. Plaintiff's fee and costs request, which was negotiated only after the substantive terms of the Settlement Agreement were agreed upon, amounts to 33.33% of the total $4,500,000 Settlement fund.

The requested fee is reasonable under the circumstances of this case. In the Seventh Circuit, "courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) (citing cases). Plaintiff's counsel have achieved an excellent result for the Class in a relatively short period of time. The settlement creates a non-reversionary Settlement Fund of $4,500,000. The majority of the Fund will be distributed as monetary awards to Settlement Class members. Further, although Plaintiff's counsel were confident in their ability to succeed at class certification and at trial, success was by no means guaranteed, especially considering First Third's substantial opposition and the complexity of the issues involved. Because Plaintiff's counsel agreed to prosecute this case on contingency with no guarantee of ever being paid, they faced substantial risk should they proceed to trial. Finally, the fee is also in line with those approved in other TCPA cases. *See, e.g., Bellows v. NCO Fin. Sys., Inc.*, No. 07-CV-1413 W(AJB), 2009 WL 35468, at *8 (S.D. Cal. Jan 5, 2009) (awarding fees and costs equal to 31.6 of the settlement fund).

Prior to final approval, Plaintiff's counsel will file a separate motion for award of attorneys' fees and costs, addressing in greater detail the facts and law supporting their fee request in light of all of the relevant facts.

### 3. The Requested Enhancement Award Is Reasonable

Enhancement awards for class representatives like the one requested here are appropriate. Such awards, which serve as premiums in addition to any claims-based recovery from the settlement, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 132 F.3d 1004 (7th Cir. 1998)

12

(approving incentive award of $25,000 to named plaintiff); *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 280 F.R.D.at 382–83 (approving incentive award to named plaintiffs because their efforts significantly benefitted the class); *see also* Manual for Compl. Lit. § 21.62 n. 971 (incentive awards may be "merited for time spent meeting with class members, monitoring cases, or responding to discovery").  Such awards are generally proportional to the representatives' losses or claims, and can range from several hundred dollars to many thousands of dollars.

Here, Plaintiff's requested enhancement award is appropriate.  Unlike unnamed Settlement Class members, who will enjoy the benefits of the representatives' efforts without taking any personal action, Plaintiff Hanley exposed himself to Fifth Third's investigation, committed himself to all the rigors of litigation in the event the case did not settle, and subjected himself to all the obligations of named parties.

### 4.    The Proposed Class Notice Is Adequate

Under Rule 23(c)(2), class members are entitled to notice of any proposed settlement and an opportunity to object or opt out before it is finally approved by the Court.  *Manual for Complex Litig*. § 21.31 (4th ed. 2004).  The advisory committee note to Rule 23 states that the "mandatory notice pursuant to subdivision (c)(2) . . . is designed to fulfill requirements of due process to which the class action procedure is of course subject."  Fed. R. Civ. P. 23(d)(2) advisory committee's note.

The Seventh Circuit has explained, "in recognition of the potential divergence of interests within the class, each class member in actions for money damages is entitled as a matter of due process to personal notice and an opportunity to opt out of the class action . . . .

Accordingly, Rule 23(c)(2) guarantees those rights for each member of a class certified under Rule 23(b)(3)." *Shurland v. Bacci Cafe & Pizzeria on Ogden, Inc.*, 271 F.R.D. 139, 144 (N.D. Ill. 2010) (quoting *Lemon v. Int'l Union of Operating Eng'rs, Local No. 139, AFL–CIO*, 216 F.3d 577, 580 (7th Cir. 2000)).  Rule 23(c)(2)(B) states for class actions such as this one, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," and explain the details of the action to those members, including the opportunity to opt out.  Fed. R. Civ. P. 23(c)(2)(B) (emphasis added).

The requirement of "personal notice" does not mean that each individual who is potentially a member of the class must receive actual notice of the class action.  *Medina v. Mfrs. & Traders Trust Co.*, No. 04 C 2175, 2004 WL 3119019, at *3 (N.D. Ill. Dec. 14, 2004) (Rule 23(b)(3) class) ("This [best notice practicable] standard can be satisfied even though a particular class member never receives actual notice."); *Kinder v. Nw. Bank*, No. 1:10-cv-405, 2012 U.S. Dist. LEXIS 97496, at *6 (W.D. Mich. June 5, 2012) ("Neither Rule 23 nor due process, however, requires actual notice to each party intended to be bound by the adjudication of a class action.") (citing *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008)).  There is an abundance of case law that supports notice by publication alone in class actions where individual class members cannot be easily identified.  *See, e.g.*, *Burns v. First Am. Bank*, No. 04 C. 7682, 2006 U.S. Dist. LEXIS 92159, at *33-38 (N.D. Ill. Dec. 19, 2006) (rejecting argument that class is unmanageable due to "serious obstacles . . . in the process of trying to identify class members and provide notice to them," because "general public notice" will suffice where individual notice is not reasonable).  The Court must simply make certain that class members receive "the best

14

practicable notice that is: 'reasonably calculated, under all the circumstances, to apprise

interested parties of the pendency of the action and afford them an opportunity to present

their objections.'" *F.C.V., Inc. v. Sterling Nat'l. Bank*, 652 F. Supp. 2d 928, 944 (N.D. Ill. 2009)

(Rule 23(b)(3) class) (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808 (1985)).

      As the Supreme Court explained: "This Court has not hesitated to approve of resort to

publication as a customary substitute in [a] class of cases where it is not reasonably possible or

practicable to give more adequate warning.  Thus it has been recognized that, in the case of

persons missing or unknown, employment of an indirect and even a probably futile means of

notification is all that the situation permits and creates no constitutional bar to a final decree

foreclosing their rights." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 316, 70 S.Ct.

652 (1950) (discussing "best notice practicable" in the context of a common trust fund

settlement). Courts have "broad discretion in fashioning the notice program in each particular

case," *Mangone v. First USA Bank*, 206 F.R.D. 222, 232 (S.D. Ill. 2001) (Rule 23(b)(3) class),

"subject only to the broad 'reasonableness' standards imposed by due process." *Simer v. Rios*,

661 F.2d 655, 686 (7th Cir. 1981) (Swygert, J., dissenting) (Rule 23(b)(3) class) (quoting *Grunin v.

Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975)).

      In cases where the names and addresses of class members are not readily ascertainable,

notice by publication alone is sufficient.  S*ee Shurland*, 271 F.R.D. at 146 ("[T]he court is

satisfied that notice by publication may be sufficient when individual class members cannot be

identified."); *In re Vivendi Universal, S.A.,* 242 F.R.D. 76, 107 (S.D.N.Y. 2007) (Rule 23(b)(3) class)

("While individual notice, where reasonably possible, is required, when class members' names

and addresses may not be ascertained by reasonable effort, publication notice has been deemed adequate to satisfy due process.").

Here, the parties are providing direct mailed notice to the approximately 200,000 persons who could reasonably be determined as most likely making up the class, and for whom names and addresses are reasonably available through Fifth Third's records. Any persons who do not receive mailed notice, for whatever reason, will receive publication notice, as their identities cannot be determined "through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The proposed notice plan is consistent with the due process requirements incorporated in Rule 23(c)(2)(B). The notice itself is clear and straightforward, and provides Settlement Class members with enough information to evaluate whether to participate in the settlement. (Ex. A § E & attached Exs. C, E–F) The notice contains all of the information required by Rule 23(c)(2)(B)(i)-(vii): the nature of the action; the class definition; the summary of the class claims and defenses; the ability to enter an appearance; the exclusion rights; the objection rights; and the binding effect of a class judgment on members under Rule 23(c)(3).

This notice plan provides the best notice practicable under the circumstances to all potential class members, and conforms to the guidelines for notice as applied within this Circuit and as mandated by Supreme Court precedent.

**B.     The Court Should Grant Class Certification for Settlement Purposes**

For settlement purposes only, the parties have agreed that the Court may make preliminary findings and enter an order granting provisional certification of the Settlement Class and appoint Plaintiff and his counsel to represent the class. "The validity of use of a

temporary settlement class is not usually questioned." Newberg, *supra*, § 11:22. The Manual for Complex Litigation, § 21.612, explains the benefits of settlement classes:

> Settlement classes—cases certified as class actions solely for settlement— can provide significant benefits to class members and enable the defendants to achieve final resolution of multiple suits. Settlement classes also permit defendants to settle while preserving the right to contest the propriety and scope of the class allegations if the settlement is not approved and, in Rule 23(b)(3) actions, to withdraw from the settlement if too many class members opt out. An early settlement produces certainty for the plaintiffs and defendants and greatly reduces litigation expenses.

For settlement purposes only, the Settlement Class is submitted for certification under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The Settlement Class is defined in the Settlement Agreement. (Ex. A § II.28) As detailed below, the Settlement Class meets all of the applicable certification requirements.

**1.    The Rule 23(a) factors are met**

**a.    The class is sufficiently numerous and joinder is impracticable**

The Settlement Class as defined meets Rule 23(a)'s numerosity requirement. Based on Fifth Third's investigation, there are approximately 200,000 Settlement Class members who are identifiable and will be sent direct notice. And although the parties are not aware of any persons who would not receive mailed notice, Settlement Class Members for whom Fifth Third does not have contact information, such as persons accidentally called on the "wrong number," will receive notice through publication notice targeted to the area codes and metropolitan areas where they are most likely to be reached. This class clearly is sufficiently numerous. *See, e.g.*, *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002) (a class of forty or more is generally sufficient to establish numerosity). The number of individuals in the Settlement Class, coupled with the fact that it is a national class that is geographically disbursed throughout the

17

country, renders joinder impracticable. *See, e.g., Randolph v. Crown Asset Mgmt., LLC*, 254 F.R.D. 513, 517 (N.D. Ill. 2008) (finding that joinder of hundreds of lawsuits is impractical).

**b.** **The Settlement Class shares many common issues of law and fact**

The Settlement Class satisfies Rule 23(a)(2)'s commonality requirement because all members are alleged to have received a telephone call from an automatic telephone dialing system, without express consent. These common issues of fact and identical legal claims under the TCPA are sufficient to show commonality here. Moreover, Plaintiff and the Settlement Class members all allegedly suffered the same injury—they received telephone calls allegedly in violation of the TCPA. In *Reliable Money Order, Inc., v McKnight Sales Co., Inc.,* 218 F.R.D. 327, 332-33 (E.D. Wis. 2012), the court certified a TCPA class in the litigation context, finding:

> The class in this action asserts the same injury: faxes sent to the potential class members in violation of the TCPA. The events surrounding the transmission of each of the faxes are identical. Additionally, determining whether the defendant violated the TCPA in relation to one plaintiff will likely answer whether the defendant violated the TCPA with regard to the remaining 3,313 members of the class. There is a possibility of individual defenses, such as a prior existing business relationship or prior express permission. But generally, the answer to the common question will resolve the class claims. Thus, the court finds that the plaintiff has established commonality.

Likewise, in *Bridgeview Heath Care Ctr. Ltd. v. Clark*, No. 09 C 5601, 2011 WL 4628744, at *5 (N.D. Ill. Sept. 30, 2011) a district court in this District certified a TCPA class, explaining that the same evidence concerning the defendant's advertising campaign applied to the plaintiff's claim as well as the claims of the class members.

Particularly in the settlement context, this case involves common issues of fact and law, including:

- Whether the Fifth Third obtained valid prior express consent from consumers before calling their cellular telephones;

- Whether Fifth Third may be held liable for calls that were made on its behalf;

- Damages, including whether the alleged violations were willful or knowing.

As the Settlement Class members here all suffered the same injury and are generally subject to the same defenses, commonality is satisfied.

### c. The Plaintiff's claims are typical of the Settlement Class

Typicality exists where the claim involves the same "event, practice or course of conduct that gives rise to the claim of the other class members, and if the claims are based on the same legal theory." *Parker v. Risk Mgmt. Alts., Inc.*, 206 F.R.D. 211, 213 (N.D. Ill. 2002); *see also* Fed. R. Civ. P. 23(a)(3). "Typicality is established when there is a 'sufficient relationship . . . between the injury to the named plaintiff and the conduct affecting the class,' and the claims of the named plaintiff and those of the class 'are based on the same legal theory.'" Newberg, *supra*, § 3:13 (citation omitted).

For virtually the same reasons discussed in the preceding section, this element also is met. The Plaintiff's claims are typical of, if not identical to, those of Settlement Class members. All claims arise out collection calls made by or on behalf of Fifth Third in alleged violation of the TCPA. The Plaintiff and Settlement Class members were all affected in the same way by this conduct.

### d. The Plaintiff and his counsel are adequate representatives

Adequacy requires the representative of a class to provide fair and adequate representation of the class. Fed. R. Civ. P. 23(a)(4). Courts in this District have broken this

requirement down into three elements: (1) the representative cannot have interests antagonistic to the class; (2) the representative must have a sufficient interest in the outcome of the litigation; and (3) counsel for the representative must have appropriate experience, qualifications, and competency. *Sledge v. Sands*, 182 F.R.D. 255, 259 (N.D. Ill. 1998); *Gammon v. GC Servs. Ltd. P'ship*., 162 F.R.D. 313, 317 (N.D. Ill. 1995).

Here, the Plaintiff has no interests that are antagonistic to or in conflict with the Settlement Class members he seeks to represent and his alleged injuries are identical to those suffered by Settlement Class members. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 625–26 (1997) (courts look simply at whether the representatives' interests are in any way antagonistic to or in conflict with those of the class members). In addition, it is undisputed that Plaintiff's counsel are active practitioners with substantial experience in consumer law and class action litigation. (*See* Exs. B–C, Class Counsel Declarations.) The requirements of Rule 23(a) therefore are satisfied.

### 1. The Rule 23(b)(3) factors are met

Rule 23(b)(3) requires that common questions predominate over individual questions, and that the class action device must be the superior method for adjudicating the controversy. The Court must consider these requirement in the context of: (1) the interest of the individual class members in controlling the litigation; (2) the extent and nature of any pending litigation involving the same matters; (3) the desirability of concentrating the litigation of all the members' claims in the forum in which the class action was commenced; and (4) the management difficulties that may be encountered in a class action. *Rahim v. Sheahan*, No. 99 C 0395, 2001 WL 1263493, at *16 (N.D. Ill. Oct. 19, 2001).

As an initial matter, the difficulties of managing a class action are vitiated by this settlement. When "confronted with a request for settlement only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620, *quoted in In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 280 F.R.D.at 385; *see also Am. Int'l Grp, Inc.*, 2012 WL 651727, at *4, (*quoting Amchem*, 521 U.S. at 622 ("settlement is a factor in the calculus" in determining whether certification is proper)). A class action is the superior method of resolving large scale claims if it will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem,* 521 U.S. at 615.

In this case the individual claims of the class are comprised of calculable statutory damages in amounts that make it uneconomic for individuals to pursue these claims on their own. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (a class action is the superior method of proceeding when it allows the plaintiffs to pool claims that would be uneconomical to litigate individually); *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 943 (7th Cir. 2006). Further, the TCPA is not fee-shifting. It is thus unlikely that individuals would invest the time and expense necessary to seek relief through litigation.

In determining the best available method for resolving a dispute, the Court may consider the "improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture,* 503 F.2d 1161, 1164-65 (7th Cir. 1974). In fact, in this case many class members may be unaware of their claims or may not understand their legal rights. *See Henry v. Cash Today, Inc.*, 199 F.R.D. 566, 574 (S.D. Tex. 2000). Many others

21

may not have access to competent counsel willing to invest the time and resources necessary to prosecute the claims.

Predominance is satisfied "when there exists generalized evidence that proves or disproves an element on a simultaneous, class-wide basis, . . . [since s]uch proof obviates the need to examine each class member's individual position." *Golon v. Ohio Savs. Bank*, 98 C 7430, 1999 WL 965593, at *4 (N.D. Ill. Oct. 15, 1999). The predominance element has clearly been met here because the claims of the class members, the circumstances under which these claims arise, and the method of proving damages are identical. Indeed, the claims of this case arise from Fifth Third's alleged common practice of using an automated dialing system to contact consumers without their consent.

**C.      Scheduling Final Approval Hearing Is Appropriate**

The last step in the settlement approval process is a Final Approval Hearing at which the Court may hear all evidence and argument necessary to make its settlement evaluation. Proponents of the settlement may explain the terms and conditions of the Settlement Agreement, and offer argument in support of final approval. The Court will determine after the Final Approval Hearing whether the Settlement should be approved, and whether to enter a final order and judgment under Rule 23(e). Plaintiff requests that the Court set a date for a hearing on final approval at the Court's convenience, but no earlier than September 18, 2013 and schedule further settlement proceedings pursuant to the schedule set forth below:

| DATE | ACTION |
|---|---|
| June 6, 2013 | Preliminary Approval Brief submitted |
| At the Court's Discretion | Preliminary Approval Order Entered |
| Within 30 days of Preliminary Approval Order | Notice Deadline |
| **A**fter 30 days of Preliminary Approval Order but within 65 days of Preliminary Approval Order | Final Approval and Fee Motion Submitted |
| 75 days after Preliminary Approval Order | Exclusion/Objection Deadline |
| 85 days after Preliminary Approval Order | Deadline for Responses to Objections |
| 95 days after Preliminary Approval Order | Final Reply Briefs Due |
| 105 days after Preliminary Approval Order | Final Approval Hearing / Noting Date |
| At the Court's Discretion | Final Approval Order Entered |

## V. CONCLUSION

The proposed class action settlement is fair, reasonable, and adequate.  For the

foregoing reasons, the proposed settlement is well within "the range of possible approval," and

should be approved in all respects.

RESPECTFULLY SUBMITTED AND DATED this 6th day of June, 2013.

TERRELL MARSHALL DAUDT & WILLIE PLLC

By:   /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
      Beth E. Terrell, *Admitted Pro Hac Vice*
      Email: bterrell@tmdwlaw.com
      Kimberlee L. Gunning, *Admitted Pro Hac Vice*
      Email:  kgunning@tmdwlaw.com
      936 North 34th Street, Suite 400
      Seattle, Washington  98103-8869
      Telephone:  (206) 816-6603
      Facsimile:  (206) 350-3528

Alexander H. Burke
Email:  aburke@burkelawllc.com
BURKE LAW OFFICES, LLC
155 North Michigan Avenue, Suite 9020
Chicago, Illinois  60601
Telephone:  (312) 729-5288
Facsimile:  (312) 729-5289

*Attorneys for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

I, Beth E. Terrell, hereby certify that on June 6, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Gary S. Caplan, #6198263
> Email:  gcaplan@ReedSmith.com
> Henry Pietrkowski, #6230048
> Email:  hpietrkowski@ReedSmith.com
> Timothy R. Carraher, #6299248
> Email:  tcarraher@ReedSmith.com
> REED SMITH LLP
> 10 South Wacker Drive, 40th Floor
> Chicago, Illinois  60606
> Telephone:  (312) 207-1000
>
> *Attorneys for Defendant*

DATED this 6th day of June, 2013.

> TERRELL MARSHALL DAUDT & WILLIE PLLC
>
>
> By:    /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
> Beth E. Terrell, *Admitted Pro Hac Vice*
> Email:  bterrell@tmdwlaw.com
> 936 North 34th Street, Suite 400
> Seattle, Washington  98103-8869
> Telephone:  (206) 816-6603
> Facsimile:  (206) 350-3528
>
> *Attorneys for Plaintiff*

25