IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DISVISION

| | |
|---|---|
| GARY HANLEY, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FIFTH THIRD BANK,<br><br>Defendant. | NO. 1:12-CV-1612<br><br>Honorable Rubin Castillo<br><br>Magistrate Judge Maria Valdez |

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

**Page No.**

I. INTRODUCTION ........ 1

II. AUTHORITY AND ARGUMENT ........ 1

A. The Settlement Is the Result of Informed, Arm's Length Negotiations ........ 1

B. Class Members Received the Best Notice Practicable ........ 3

C. The Settlement Satisfies the Criteria for Final Approval ........ 4

1. The Strength of Plaintiff's Case Compared to the Amount of the Settlement ........ 5

2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation ........ 6

3. Opposition to the Settlement ........ 7

4. The Opinion of Counsel ........ 8

5. The Extent of Discovery Completed and the Stage of the Proceedings ........ 8

III. CONCLUSION ........ 9

## TABLE OF AUTHORITIES

**Page No.**

### FEDERAL CASES

*Am. Civil Liberties Union v. U.S. Gen. Servs. Admin.*,
235 F. Supp. 2d 816 (N.D. Ill. 2002) ........ 7

*Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*,
616 F.2d 305 (7th Cir. 1980) ........ 4

*Bridgeview Heath Care Ctr. Ltd. v. Clark*,
No. 09 C 5601, 2011 WL 4628744 (N.D. Ill. Sept. 30, 2011) ........ 7

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
768 F.2d 884 (7th Cir. 1985) ........ 1

*Goldsmith v. Tech Solutions Co.*,
No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ........ 1

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
270 F.R.D. 350 (N.D. Ill. 2010) ........ 8

*In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*,
280 F.R.D. 364 (N.D. Ill. 2011) ........ 4, 6, 7

*In re Mexico Money Transfer Litig.*,
164 F. Supp. 2d 1002 (N.D. Ill. 2000) ........ 6

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) ........ 1, 4, 7, 8

*Kenro, Inc. v. Fax Daily, Inc.*,
962 F. Supp. 1162 (S.D. Ind. 1997) ........ 7

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
463 F.3d 646 (7th Cir. 2006) ........ 4

*Uhl v. Thoroughbred Tech. & Telecommunc'ns, Inc.*,
309 F.3d 978 (7th Cir. 2009) ........ 1

## OTHER AUTHORITIES

H. Newberg & A. Conte, Newberg on Class Actions § 11:41 (4th ed. 2002) .............................. 1

*Manual for Complex Litigation* (Fourth) § 21.61 (2010) ............................................................ 1

## I. INTRODUCTION

Plaintiff Gary Hanley ("Plaintiff") respectfully submits this memorandum in support of his motion for final approval of the settlement reached in this class action. For the reasons set forth in this memorandum and in the papers previously submitted in support of approval, the settlement is fair, adequate, reasonable, and in the best interests of the Class. Accordingly, Plaintiff respectfully requests that the Court grant final approval to the settlement by: (1) approving the proposed Settlement Agreement as fair, adequate, and reasonable for the certified Class; and (2) determining that adequate notice was provided to the Class.[1]

## II. AUTHORITY AND ARGUMENT

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (citing *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888–89 (7th Cir. 1985)). When faced with a motion for final approval of a class action settlement under Rule 23, a court's inquiry is limited to whether the settlement is "lawful, fair, reasonable, and adequate." *Uhl v. Thoroughbred Tech. & Telecommunc'ns, Inc.*, 309 F.3d 978, 986 (7th Cir. 2009). A settlement is fair, adequate, and reasonable, and merits final approval, when "the interests of the class as a whole are better served by the settlement than by further litigation." *Manual for Complex Litigation* (Fourth) ("MCL 4th") § 21.61, at 480 (2010).

### A. The Settlement Is the Result of Informed, Arm's-Length Negotiations

A proposed class settlement is presumptively fair where it "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." H. Newberg & A. Conte, Newberg on Class Actions ("Newberg") § 11:41 (4th ed. 2002); *Goldsmith v. Tech Solutions Co.*, No. 92 C 4374, 1995 WL 17009594, *3 (N.D. Ill. Oct. 10, 1995). The settlement here satisfies this test.

---

[1] Plaintiff has submitted a separate motion requesting that the Court approve his reasonable fees and costs as well as an incentive award for the named Plaintiff.

As the Court recognized in its preliminary approval order, the settlement "resulted from extensive arm's length negotiations." Dkt. No. 73 ¶ 1. The parties are represented by highly competent counsel who have years of experience litigating and settling complex class actions, including actions involving alleged violations of the TCPA. *See* Ex. 1 (Declaration of Alexander H. Burke) ¶¶ 1–9; Ex. 2 (Declaration of Beth E. Terrell) ¶¶ 2–8. To reach this settlement, the parties engaged in extensive negotiations, which included two formal settlement conferences (with the Honorable Maria Valdez and the Honorable Ruben Castillo respectively) and mediation with a private mediator, the Honorable Richard Neville (Ret.). *See* Dkt. No. 69-2 ¶ 2. Mr. Hanley attended the first settlement conference in person and participated by phone during the other two sessions. *Id.* Those discussions culminated in a Settlement Agreement that provides substantial benefits to the Class, including payment by First Third of $4.5 million into a settlement fund.

The settlement is the result of a thorough investigation by the parties. During the negotiating process, the parties exchanged detailed, confidential mediation statements in which they set forth their respective litigation positions. Dkt. No. 69-1 (Settlement Agreement) ¶ I.F. Plaintiff also demanded and received information establishing the size of the Class. *Id.* ¶ F. Indeed, this information was crucial for Plaintiff to evaluate class-wide damages and he refused to settle without it. *Id.* Fifth Third provided a proposed affidavit on April 2, 2013. Plaintiff was not satisfied with the information provided in this initial affidavit and requested that Fifth Third revise the affidavit to incorporate additional information. *Id.* On May 6, 2013, Fifth Third provided a revised affidavit which addressed Plaintiff's concerns. *Id.* The affidavit both estimated the number of Class members in this case and explained the method by which Fifth Third had identified the Class members. *See* Ex. 2 (Terrell Decl.) ¶ 11. This information permitted Plaintiff to assess the fairness of Fifth Third's settlement offer and assured him that it would provide substantial relief to the Class members especially in light of the risks of continued litigation.

For these reasons, the settlement is entitled to a presumption of fairness.

**B. Class Members Received the Best Notice Practicable**

This Court has already determined that the notice program in this case meets the requirements of due process and applicable law, provides the best notice practicable under the circumstances, and constitutes due and sufficient notice to all individuals entitled thereto. Dkt. No. 73 ¶ 7. This notice program has been fully implemented by independent claims administrator, Rust Consulting, Inc. ("Rust"). *See generally* Ex. 3 (Declaration of Rust Consulting, Inc. Regarding Timely Compliance of Class Notice) ("Rust Decl.").

Fifth Third provided Rust with a list containing the names of over 200,000 Class members, for whom Fifth Third possesses a mailing address (the "Class List"). Rust Decl. ¶ 6. After receiving the Class List, Rust processed the data to ensure adequate formatting. *Id.* Rust then mailed a postcard containing a summary of the settlement to all persons on the Class List using the formatted addresses. *Id.* ¶ 7. In total, Rust mailed 216,498 postcards. *Id.* ¶ 8.

The noticed mailed to Class members informed them of: (1) the settlement's benefits; (2) deadlines for all Class members to file a claim form, opt out of the settlement, and object to the settlement and/or Class Counsel's fee request; (3) the amount being sought by Class Counsel in attorneys' fees and costs; (4) the address for the settlement website where they can obtain more information, download forms, and file claims; and (5) the date and location of the final approval hearing. Rust Decl., Ex. 1. If a mailed notice was returned as undeliverable, Rust attempted to locate updated addresses and then re-mailed the notices to the updated addresses. Rust Decl. ¶ 9. If notices were returned with forwarding addresses, Rust re-mailed the notices to the Class members at their forwarding addresses. *Id.* As of September 30, 2013, postcard notices reached 97 percent of the Class members. *Id.* ¶ 10.

In addition to mailed notice, Rust published notice of the settlement in three national magazines, including *Good Housekeeping*, *Motor Trend*, and *Parents*. Rust Decl. ¶ 12 & Ex. 2. Notice of the settlement also was published in the September issue of multiple regional magazines, including *City & Shore Magazine*, *Illinois Country Living*, *Indianapolis Monthly*, *Kentucky Living*, and *Ohio Magazine*. *Id.* The notice also was published in the *Grand Rapids*

*Press*, running throughout September. *Id.* Notice also was published electronically on seven distinct websites. *Id.*

Although the exclusion, objection, and claims deadlines have not yet passed, all indication are that the notice program has been highly successful. As of September 30, 2013, Rust had received a total of 1,588 telephone calls to its toll free line and there have been approximately 49,650 unique visits to the website. Rust Decl. ¶¶ 14–15. As of September 30, 2013, 13,591 Class members have filed claims. *Id.* ¶ 16. The deadline to file a claim is not until November 22, 2013.

In sum, the notice program approved by this Court and implemented by Rust has provided due and adequate notice of these proceedings and of the matters set forth therein, including the Settlement Agreement, to all parties entitled to such notice and satisfied the requirements of Federal Rule of Civil Procedure 23 and the requirements of constitutional due process.

**C.    The Settlement Satisfies the Criteria for Final Approval**

In assessing the fairness, reasonableness, and adequacy of a settlement, courts view the facts in the light most favorable to the settlement. *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 280 F.R.D. 364, 375 (N.D. Ill. 2011) (citing *Isby*, 75 F.3d at 1199). "[T]he Court must not substitute its own judgment as to the optimal settlement terms for the judgment of the litigants and their counsel." *Id.* (citing *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 315 (7th Cir. 1980)).

To evaluate fairness, courts consider the following factors: (1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement; (2) the complexity, length and expense of the litigation; (3) the amount of opposition to the settlement by affected parties; and (4) the opinion of competent counsel; and (5) the amount of discovery completed at the time of settlement. *Isby*, 75 F.3d at 1199. Of these considerations, the first is most important. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Applied to this case, the relevant criteria support final approval of the settlement.

      1. The Strength of Plaintiff's Case Compared to the Amount of the Settlement

Although Plaintiff has thoroughly investigated the factual and legal bases for his claims and has developed substantial evidence supporting his allegations that Fifth Third violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*., one cannot ignore the presence of significant risks in continuing the litigation had settlement not occurred. This case turns on, among other things, competing interpretations as to whether Plaintiff and Class members "consented" to receiving automated calls from Fifth Third on their cellular telephone. Plaintiff's position is that Fifth Third failed to obtain his and Class members' consent before placing automated calls to Plaintiff and Class members' cellular telephones. *See* Dkt. No. 49 ¶ 4. Fifth Third also continued to place unlawful automated calls even after Plaintiff and Class members told Fifth Third to stop. *Id.* Plaintiff alleges that in such circumstances, Plaintiff and Class members are entitled to minimum statutory damages of $500 per call. *See id.* ¶ 42.

Fifth Third, on the other hand, has steadfastly maintained that some or all of the Class members gave Fifth Third prior express consent to contact them at their cellular phone numbers because they provided their cellular telephone numbers when they applied for an automobile service contract with Zurich Insurance Company. *See* Dkt. No. 39 at 4–5. Fifth Third further asserts that as a matter of law a debtor cannot revoke prior express consent to receiving automated calls on his or her cellular telephone or, in the alternative, can only revoke consent in writing. Even if a debtor is permitted to revoke consent either orally or in writing, Fifth Third maintains the case cannot proceed as a class action because class it would be impossible to ascertain individuals who revoked consent. *See id.* at 2.

If the Court found that the TCPA permits "prior express consent" to be given via a contract with a third party and/or cannot be revoked, Fifth Third could have effectively reduced the recoverable damages or eliminated them altogether. Even if Plaintiff prevailed on his interpretation of the TCPA, the decision, given the amount at stake, would be appealed to the Seventh Circuit and perhaps the Supreme Court.

Under the settlement, Class members avoid all of those risks and obstacles to recovery and receive substantial benefits, and in a timely fashion. Plaintiff and his counsel have negotiated an excellent settlement for the Class that requires Fifth Third to pay $4.5 million into a settlement fund for the benefit of the Class. All Class members can recover a pro rata portion of the settlement fund after settlement costs are deducted, through a straightforward claim process that only requires completing a simple one-page form. As of September 30, 2013, 13,591 individuals have submitted a claim. If the deadline for submitting claims were today and presuming the Court approves Class Counsel's requested fee and incentive award, each claimant would receive approximately $188.13 ($4.5 million – $1.5 million attorneys' fees – $25,000 incentive award – $418,160 notice and administration costs/13,591 = $188.13). In light of the real risks outlined above combined with the fact that Plaintiff and Class members faced lengthy, protracted, and expensive litigation had they not settled, this is a fair settlement that puts money in Class members' pockets immediately. *See In re Ky. Grilled Chicken*, 208 F.R.D. at 377 ("It has been held proper to take the bird in hand instead of a prospective flock in the bush") (quotation and internal marks omitted).

    2.    <u>The Risk, Expense, Complexity, and Likely Duration of Further Litigation</u>

"Final approval of a settlement is favored where continued litigation would require resolution of complex issues at considerable expense and would absorb many days of trial time." *In re Ky. Grilled Chicken*, 280 F.R.D. at 377 (citing *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000) (finding that settlement is favored where further litigation would require additional written discovery, depositions and expert discovery, and where appellate practice is likely to result). Throughout the negotiation process, Fifth Third vigorously defended its position and expressed every intention of continuing a spirited defense, absent a settlement, through trial and appeal. Class Counsel have a significant amount of experience in consumer class action litigation and know from their own experience that any case involving a nationwide class can, and often does, lead to costly litigation that goes on for years.

Moreover, there is a substantial risk of losing inherent in any jury trial. Even if Plaintiff prevailed at trial, Fifth Third would almost certainly appeal, threatening a reversal of any favorable outcome and causing significant delays in obtaining any relief for Class members. "Thus, simply obtaining a result—good or bad—could be years away if litigation were to continue, which dictates that the immediate benefit provided by the Settlement Agreement is strongly preferred." *See In re Ky. Grilled Chicken*, 280 F.R.D. at 377 (approving coupon settlement where the court found that further litigation of the nationwide class action would require the parties to incur the costs of further discovery, retention of expert witnesses, brief highly contested motions, and participate in a lengthy trial).

Another risk Plaintiff faced going forward is that this Court would decline to certify this case as a class action. As Plaintiff explained at preliminary approval, courts are split and have either granted or denied class certification in TCPA cases depending upon the facts of the case. *Compare Bridgeview Heath Care Ctr. Ltd. v. Clark*, No. 09 C 5601, 2011 WL 4628744, at *5 (N.D. Ill. Sept. 30, 2011) (granting class certification) with *Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1169 (S.D. Ind. 1997) (denying class certification). If Fifth Third were able to present convincing facts to support its position, the Court could have refused to certify the class, leaving only the named Plaintiff to pursue his individual claims.

3. Opposition to the Settlement

The lack of objectors challenging the settlement favors a finding that the settlement is fair and reasonable. *In re Ky. Grilled Chicken*, 280 F.R.D. at 377 (citing *Am. Civil Liberties Union v. U.S. Gen. Servs. Admin.*, 235 F. Supp. 2d 816, 819 (N.D. Ill. 2002). Thus far, in a class consisting of hundreds of thousands of members, no Class members have objected to the settlement and there have been only seven requests for exclusion. *See* Ex. 1 (Burke Decl.) ¶ 12; Ex. 2 (Terrell Decl.) ¶ 12. This constitutes strong circumstantial evidence that the settlement is fair. *See In re Kentucky Grilled Chicken*, 280 F.R.D. at 377 (approving settlement where there was only one objection). Indeed, settlements have been approved over the objections of a relatively large percentage of the Class. *Isby*, 75 F.3d at 1200 (approving settlement over

objections of 13 percent of the class); *Hiram Walker & Sons*, 768 F.2d at 891 (approving settlement where 15 percent of the affected class objected).[2]

4. The Opinion of Counsel

Where class counsel is qualified and well informed, their opinion that a settlement is fair, reasonable, and adequate is entitled to significant weight. *See Isby*, 75 F.3d at 1200. Here, Class Counsel, who are extremely experienced in class action litigation generally and TCPA cases in particular, believe the settlement is fair, reasonable, adequate, and in the best interest of the Class as a whole. Dkt. No. 69-2 (Burke Decl.) ¶ 3; Dkt. No. 69-3 (Terrell Decl.) ¶ 9.

5. The Extent of Discovery Completed and the Stage of the Proceedings

Courts consider the extent of discovery completed and the stage of the proceedings in determining whether a class action settlement is fair, adequate and reasonable. Courts regularly approve prompt settlements achieved prior to the commencement of formal discovery, "especially where counsel have conducted a significant amount of informal discovery and dedicated a significant amount of time and resources to advancing the underlying lawsuits." *In re Ky. Grilled Chicken*, 280 F.R.D. at 378 (quoting *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 350, 350 (N.D. Ill. 2010) (internal quotation marks omitted)).

The settlement is the result of a thorough investigation, formal and informal discovery, and an extensive evaluation of Plaintiff's legal claims. Plaintiff propounded written discovery to Fifth Third, the responses to which prompted Plaintiff to file a motion for leave to amend the complaint. *See* Ex. 2 (Terrell Decl.) ¶ 10. In briefing the motion for leave to amend, the parties thoroughly analyzed the central factual and legal issue of this case — whether Plaintiff and Class members expressly "consented" to receive automated calls from Fifth Third on their cellular telephones — early on. *See id*. In advance of mediation, the parties exchanged further analyses of the issues and set forth their positions in even more detail. *Id.* Even after the parties came to an agreement in principle, Plaintiff refused to agree to a settlement amount until he had received

[2] The exclusion and objection deadline expires on October 10, 2013. Plaintiff will respond to any objections received between the filing of this motion and the deadline.

a sworn affidavit from Fifth Third estimating the number of unlawful calls that were made to Class members and providing a basis for the estimate. Ex. 1 (Burke Decl.) ¶ 10; Ex. 2 (Terrell Decl.) ¶ 11.

The fact that the settlement was achieved through negotiations by well-informed counsel favors settlement approval.

**III. CONCLUSION**

The settlement is fair, adequate and reasonable. The $4.5 million that Fifth Third must pay to the Class is an outstanding result in light of the recoveries potentially available under the law and the risks of continued litigation. Plaintiff respectfully requests that the Court grant final approval to the settlement.

RESPECTFULLY SUBMITTED AND DATED this 3rd day of October, 2013.

TERRELL MARSHALL DAUDT & WILLIE PLLC

By: /s/ Beth E. Terrell, *Admitted Pro Hac Vice*

Beth E. Terrell, *Admitted Pro Hac Vice*
Email: bterrell@tmdwlaw.com
Kimberlee L. Gunning, *Admitted Pro Hac Vice*
Email: kgunning@tmdwlaw.com
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 350-3528

Alexander H. Burke
Email: aburke@burkelawllc.com
BURKE LAW OFFICES, LLC
155 North Michigan Avenue, Suite 9020
Chicago, Illinois 60601
Telephone: (312) 729-5288
Facsimile: (312) 729-5289

*Attorneys for Plaintiff*

CERTIFICATE OF SERVICE

I, Beth E. Terrell, hereby certify that on October 3, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Gary S. Caplan, #6198263
Email: gcaplan@ReedSmith.com
Henry Pietrkowski, #6230048
Email: hpietrkowski@ReedSmith.com
Timothy R. Carraher, #6299248
Email: tcarraher@ReedSmith.com
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, Illinois 60606
Telephone: (312) 207-1000

*Attorneys for Defendant*

DATED this 3rd day of October, 2013.

TERRELL MARSHALL DAUDT & WILLIE PLLC

By: /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
Beth E. Terrell, *Admitted Pro Hac Vice*
Email: bterrell@tmdwlaw.com
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 350-3528

*Attorneys for Plaintiff*